IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

**Civil Action No. 05-cv-02377-MSK-MJW**

ROBERT F. SYLVESTER,

Applicant,

v.

JOE ORTIZ, et al.,

Respondents.

---

**RECOMMENDATION ON APPLICATION FOR A WRIT OF HABEAS CORPUS
PURSUANT TO 28 U.S.C. § 2254 (Docket No. 2)**

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**


This case is before this court pursuant to a Order of Reference to Magistrate

Judge issued by District Judge Marcia S. Krieger on December 19, 2005.  (Docket No.

10).

Before the court for a report and recommendation is the pro se incarcerated

petitioner's Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("the

petition") (Docket No. 2).  Respondents Ortiz and Suthers[1] timely filed an Answer

(Docket No. 16).  The court has very carefully and thoroughly reviewed the petition,

the Answer, and the state court records, including the transcript of the 35(c) hearing

held on November 22, 2002.  In addition, the court has taken judicial notice of the

---

[1]The Attorney General of Colorado does not represent Respondent John
Turnball, Superintendent of the Spring Creek Correctional Facility in Alaska, where
petitioner is being housed on the Colorado conviction at issue here.

court's file and has considered applicable case law, Federal Rules of Civil Procedure, and statutes. The court now being fully informed makes the following findings, conclusions, and recommendation that the petition be denied and dismissed.

In the petition, the petitioner challenges a judgment of conviction entered in the District Court of the City and County of Denver in Case No. 99CR4296. In that case, it was alleged that as executive director of a halfway house for parolees (Dismas House), petitioner forced several male residents to engage in sexual acts with him against their will and threatened to return them to prison if they refused. Following a jury trial, petitioner was found guilty of six counts of second-degree sexual assault, three counts of criminal extortion, and one count of racketeering. Thereafter, following a bench trial, he was convicted of three habitual criminal counts. On October 23, 2000, he was sentenced to a total of 288 years in the Department of Corrections, to be followed by a five-year period of mandatory parole. At the present time, he is serving this sentence in Alaska.

Petitioner filed a direct appeal to the Colorado Court of Appeals ("CCA"), but that appeal was dismissed on petitioner's motion on March 13, 2002. While that appeal was pending, petitioner filed in the state trial court a Rule 35(c) motion for post-conviction relief based on alleged ineffective assistance of counsel. Following a hearing, at which petitioner was represented by counsel, the trial court denied the motion from the bench. The court found:

> one, that under the <u>Strickland</u> standards that Ms. Schauer's performance did not fall below the level of a reasonably – of a reasonable, competent assistance demanded of attorneys in criminal

cases.

Two.  I also find that in hindsight, things could have been done differently.  Strategic decisions could have been made differently, witnesses could have been handled differently, different witnesses could have been called, even though I'm not prepared to say that had those decisions been made, that there is no reasonable likelihood in the Court's mind that it would have made any difference in the outcome of this trial, and, therefore, I can't say that anything Ms. Schauer did caused any prejudice to the defendant or could have affected the outcome of the case.

That being the case, I find that the defendant has failed to establish by a preponderance of the evidence that Ms. Schauer was ineffective in the handling of this case.  (Trans. at 286-96).

Petitioner appealed, and the CCA affirmed.  (Resps.' Appx. F).  The Colorado Supreme Court denied the petitioner's petition for certiorari on November 30, 2004. (Resps.' Appx. G & H).

Petitioner then filed his petition in this court in which he raises an ineffective assistance of counsel claim on the following grounds: (1) inadequate pre-trial investigation, namely, failure to contact several witnesses and failure to call several witnesses to testify; (2) failure to request a continuance or allow adequate time to prepare for trial; (3) voir dire errors (not conducting adequate inquiry, not challenging for cause three jurors who could not accept that an innocent defendant would not testify, and not using peremptory challenges as to two of those jurors), (4) failure to exclude or put in proper context evidence of the petitioner's prior felony convictions, (5) failure to prevent prejudicial, inadmissible, and unfair expert opinion of Veronica Carmody, (6) not properly cross-examining expert witness Margaret Heil, who testified about the "convict code," (7) failure to investigate and obtain the assistance of counter-experts, (8) failure to advise petitioner adequately about his testimonial

rights, and (9) failure to subject the habitual criminal counts to any adversarial testing.

**Exhaustion and Procedural Default**

"Except for a few narrow exceptions, § 2254 habeas petitioners must exhaust available state court remedies before seeking habeas relief." Cannon v. Gibson, 259 F.3d 1253, 1265 (10th Cir. 2001) (citing § 2254(b)(1)).  To satisfy this requirement, the petitioner "'must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.'"  O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).  Section 2254 of Title 28, U.S.C., as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides as follows with regard to exhaustion of state court remedies:

. . .

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B)(i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies

available in the courts of the State, within the meaning of this section, if he
has the right under the law of the State to raise, by any available
procedure, the question presented. . . .

28 U.S.C. § 2254(b), (c).

Respondents correctly assert that the petitioner did not fairly present all of his
ineffective assistance allegations in state court, namely, claims 2, 4, 6, and 7,
because while they were raised in his post-conviction motion, he did not pursue
them in his appeal of the denial his 35(c) motion by the trial court. Instead, in that
appeal, petitioner raised only claims 1, 3, 5, 8, and 9 as issues of federal
constitutional law. Therefore, respondents correctly assert that the petitioner did not
exhaust claims 2, 4, 6, and 7.

Respondents further correctly assert that the petitioner has also procedurally
defaulted those claims. The state appellate court rules prohibit the petitioner from
appealing the denial of the claims at this late date, C.A.R. 4(b)(1); People v. Adams,
905 P.2d 17, 18 (Colo. App. 1995), and any attempt to raise them in yet another post-
conviction motion would be rejected as successive. See Colo. R. Crim. P. 35(c)(3)(VII)
(with exceptions not applicable here, state post-conviction court shall deny any claim
that could have been presented in a previous appeal); People v. Hubbard, 184 Colo.
243 (1974) (successive application rule).

In situations like this, federal courts apply an anticipatory bar. Anderson v.
Sirmons, 476 F.3d 1131, 1140 n.7 (10th Cir. 2007) ("'Anticipatory procedural bar' occurs
when the federal courts apply procedural bar to an unexhausted claim that would be
procedurally barred under state law if the petitioner returned to state court to exhaust
it."). "Under an anticipatory bar, this Court is procedurally barred from considering the

Petitioner's claims, unless he can demonstrate 'cause and prejudice' for the default, or demonstrate that a fundamental miscarriage of justice would result." <u>Navarro v. Leyba</u>, 2007 WL 2908832, *7 (D. Colo. Oct. 4, 2007) (citing <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991)). "To demonstrate cause and actual prejudice, Petitioner must show that efforts to raise the claims at earlier stages were impeded by 'some objective factor,' such as a factual or legal basis for a claim that was not reasonably available during prior proceedings. . . ." <u>Id.</u> (quoting <u>McCleskey v. Zant</u>, 499 U.S. 467, 493-94, 496 (1991)). No such showing has been made here.

Furthermore, "[t]o demonstrate a fundamental miscarriage of justice, Petitioner must demonstrate that a constitutional error has probably resulted in the conviction of one who is actually innocent." <u>Kasper v. Estep</u>, 2007 WL 1834174, *8 (D. Colo. June 25, 2007) (citing <u>Bousley v. United States</u>, 523 U.S. 614, 623 (1998)), <u>appeal dismissed</u>, 256 Fed. Appx. 202 (10th Cir. 2007), <u>cert. denied</u>, 128 S. Ct. 1753 (2008). "To be credible, such a claim requires [petitioner] to support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." <u>Id.</u> (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 324 (1995)). <u>See</u> <u>House v. Bell</u>, 547 U.S. 518 (2006) (same). Again, no such showing has been made here.

Therefore, the court will not review the petitioner's claims of ineffective assistance of counsel that were allegedly the result of his attorney's alleged failure to request a continuance or allow adequate time to prepare for trial; failure to exclude or put in proper context evidence of the petitioner's prior felony convictions; not properly cross-examining expert witness Margaret Heil, who testified about the

"convict code;" and failure to investigate and obtain the assistance of counter-experts.

**Ineffective Assistance of Counsel**

"The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002). "Under AEDPA, 'federal habeas review of state convictions is limited when the state courts have adjudicated a claim on the merits.'" Parker v. Scott, 394 F.3d 1302, 1308 (10th Cir. 2005). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." Schriro v. Landrigan, 127 S.Ct. 1933, 1939 (2007).

More specifically, 28 U.S.C. § 2254 provides in pertinent part:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(e) (1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(d), (e)(1).  With regard to § 2254(d)(1), the U.S. Supreme Court

has stated that

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses
> have independent meaning. . . .  A federal habeas court may issue the
> writ under the "contrary to" clause if the state court applies a rule
> different from the governing law set forth in our cases, or if it decides a
> case differently than we have done on a set of materially
> indistinguishable facts. . . .  The court may grant relief under the
> "unreasonable application" clause if the state court correctly identifies
> the governing legal principle from our decisions but unreasonably
> applies it to the facts of the particular case. . . .  The focus of the latter
> inquiry is on whether the state court's application of clearly established
> federal law is objectively unreasonable, and we stressed in *Williams* [*v.
> Taylor*, 529 U.S. 362, 409-10 (2000),] that an unreasonable application
> is different from an incorrect one. . . . See also *id.*, at 411 . . . (a federal
> habeas court may not issue a writ under the unreasonable application
> clause "simply because that court concludes in its independent
> judgment that the relevant state-court decision applied clearly
> established federal law erroneously or incorrectly").

Bell v. Cone, 535 U.S. at 694.

"Avoiding these pitfalls does not require citation of [Supreme Court] cases-

indeed, it does not even require awareness of our cases, so long as neither the

reasoning nor the result of the state-court decision contradicts them."  Early v.

Packer, 537 U.S. 3, 8 (2002).  "Furthermore, under § 2254(d)(1), the only 'federal

law' [the court] consider[s] is 'clearly established federal law as determined by

decisions, not dicta, of the Supreme Court.' . . .  Thus, 'an absolute prerequisite for

[a habeas petitioner's] claim is that the asserted constitutional right on which it rests

derive in clear fashion from Supreme Court precedent.'"  Parker v. Scott, 394 F.3d at

1308.  "In sum, [the court] may only grant relief under § 2254(d) if we can say, with

confidence, that the [CCA's] decision unreasonably applied clearly established

Supreme Court law to the facts of this case.  If, however, the [CCA's] decision is an

objectively reasonable application of Supreme Court law, then relief 'shall not be granted,' 28 U.S.C. § 2254(d)(1), even if we would have reached a different result under our own independent review." Id. at 1309.

With the above standards in mind, this court will review the petitioners' exhausted claims of ineffective assistance of counsel. "Ineffective assistance claims are reviewed under the framework set forth by the Court in Strickland v. Washington. To prove ineffective assistance of counsel at . . . the trial . . . stage, a defendant must show, by a preponderance of the evidence, that (1) counsel's performance fell below an objective standard of reasonableness, and (2) prejudice, such that there is a reasonable probability that but for counsel's errors, the outcome of the trial would have been different." Young v. Sirmons, 486 F.3d 655, 674-75 (10th Cir. 2007) (citing Strickland, 466 U.S. 668, 688 (1984)), cert. denied, (2008). Here, both the trial court and the CCA utilized the Strickland framework in their analyses.

"Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Strickland, 466 U.S. at 689. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id.

**Pretrial Investigation.** Petitioner asserts that his trial counsel was ineffective

because "[i]nsufficient investigation was conducted in preparation for this trial as there were over forty potential witnesses and trial counsel failed to contact several relevant and favorable witnesses and failed to call several and favorable witnesses to testify on behalf of the defense." (Docket No. 2 at 11). Petitioner lists thirteen of such witnesses, and affidavits of some of them and by a private investigator who contacted others are attached to the state 35(c) motion. Five of those listed had been contacted by trial counsel but were not called to testify. Another person listed contacted the defense herself but was not called. These potential witnesses, for the most part, would have testified regarding the petitioner's character, his lack of propensity to commit the crimes, the layout of the Dismas House and the house rules, and that they never heard any reports of inappropriate conduct by the petitioner. Petitioner asserts that

> [] trial counsel's failure to interview these favorable and relevant witnesses constituted ineffective assistance of counsel as there were other errors committed as a result of this lack of thorough pretrial investigation and as a result of these witnesses being called, the defense case at trial was weak and easily overcome by the prosecution's case. As such, the performance of counsel was well below the professional standard and the errors of counsel were serious enough to deprive the accused of a "trial whose result is reliable" and as such, petitioner was prejudiced thereby. This lack of sufficient pretrial investigation was ineffective assistance of counsel.

> [] trial counsel's decision not to call other witnesses that were contacted by the defense was deficient representation because, as the referenced Affidavits indicated, these witnesses were all favorable, available and credible. Petitioner was prejudiced by the failure to call these witnesses on behalf of the defense as the witnesses called by the defense were insufficient to convince the jury of the defense theory of the case. As such, this decision to not call these witnesses constituted ineffective assistance of counsel.

(Docket No. 2 at 12-13).

Both the petitioner's trial attorney (Tone Schauer) and her investigator

(Richard Demarest) testified at the 35(c) hearing regarding the pretrial investigation

done in this case.  Immediately following that hearing, the trial court made the

following findings with respect to this issue:

> As to witnesses, there is testimony that Ms. Schauer as to at least one witness decided to call a witness and tried to get ahold of that witness, couldn't get ahold of that witness, made a decision to go on without that witness.

> And I find, first of all, having listened to that witness, there was nothing said by that witness that – that the Court found would have been found compelling by the jury, and I'm unable to say it would have had any affect on the verdict.

> As a matter of fact, I'm quite certain that the opposite is true.  On the other hand, the decision when you can't locate a witness to move on without that witness, I'm convinced is a reasonable strategic decision to make.

> As to who to call as a witness, and there's been some folks who we have affidavits for, others who have actually appeared here today, I can tell you as to those who appeared here today, I think I would have to agree if a strategic decision was made not to call those witnesses, I'd have to agree with that decision based on what I heard.

> There are always strengths and weaknesses with any witness, and you have to measure those in the context of the case as it's going and make a determination as to whether on balance this'll help your case or hurt your case or make any difference.

> I can say with respect to Mr. Robero, I can't see that he would have made any difference given his time frame.  As to Ms. Reisch and Ms. Hetherington, it appears that was a legitimate strategic decision, on balance, that decision as what they could or could not add in the case and to make the decision whether to call them as witnesses.

> It does appear that Mr. Demarest and Ms. Schauer made extensive efforts when it comes to contacting witnesses, interviewing witnesses, talking to people, and getting information from the defendant about that.  And, again, I'm unprepared to say that any of those decisions, even viewed with hindsight, are not merely the proper strategic decisions to be made by counsel.

(35(c) Hearing Tr. at 291-92 ).

The CCA subsequently made the following findings:

Initially, defendant contends he was denied the effective assistance of counsel because trial counsel failed to conduct a sufficient investigation and failed to interview and to call favorable witnesses.  We disagree.

A defendant is entitled to a pretrial investigation sufficient to reveal potential defenses and the facts relevant to guilt or penalty; a less than comprehensive investigation is reasonable only to the extent that reasonable professional judgment supports the limits of the investigation.  Davis II, supra; People v. Apodaca, 998 P.2d 25 (Colo. App. 1999).

Here, trial counsel explained at the Crim. P. 35(c) hearing that she and her investigator had conducted an "enormous amount of investigation," and she believed she had talked with all the important witnesses.

The trial court found that "extensive efforts" had been made in terms of "contacting witnesses, interviewing witnesses, talking to people and getting information from defendant."  The court concluded that the decisions made by trial counsel were proper, strategic decisions.

The record supports the trial court's findings and conclusions. Thus, we reject defendant's claim.

Additionally, we note that the decision to call particular witnesses is a tactical one within trial counsel's discretion.  Davis II, supra.  Mere disagreement as to trial strategy will not support a claim for ineffective assistance of counsel.  People v. Bossert, 722 P.2d 998 (Colo. 1986).

Here, at the Crim. P. 35(c) hearing, defendant presented testimony from two potential witnesses and introduced affidavits from three others indicating that, despite being ready to testify on defendant's behalf, they were never called.

Trial counsel explained at that hearing that her decision not to interview and call certain favorable character witnesses was strategic. Because she feared that their testimony would allow the prosecution to present negative character evidence, which would not otherwise be heard by the jury, and after discussion of this matter with defendant,

counsel elected not to "open the door" to defendant's character. This was a reasonable strategic decision.

The record also shows that counsel had interviewed and elected to call another witness, but could not contact him on the final day of trial. Trial counsel testified that the decision not to "go hunting for" the witness was a strategic one. She further testified that she "covered herself with other witnesses."

The trial court determined that trial counsel's decisions were "legitimate strategic decision(s)." The court concluded that the evidence presented at the Crim. P. 35(c) hearing in the form of live testimony and affidavits was inconsequential in light of other evidence presented at trial, and that the failure to present it did not create a reasonable probability that the result of the trial would have been different.

We agree with the trial court's conclusions. Thus, there is no basis for a finding of ineffective assistance here.

(Resps.' Appx. F at 3-5).

 "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland, 466 U.S. at 691. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Id. at 690-91.

Here, the record from the 35(c) hearing supports the state courts' findings that extensive efforts were made by the defense attorney and investigator with respect to contacting and interviewing witnesses. This court finds that the state courts'

conclusion that petitioner's trial counsel did not provide ineffective assistance based on her strategic decision not to interview and/or call certain character witnesses did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law.

**Voir Dire Errors.**  Petitioner contends that during voir dire, his trial counsel made prejudicial errors.  He asserts:

> [ ] During *voir dire*, Juror Kathy Burke clearly expressed her desire to hear the petitioner's testimony despite being advised by the Court that the Defendant was presumed innocent and the burden was completely on the prosecution to prove the allegations beyond a reasonable doubt . . . .  Trial counsel generally questioned the panel regarding the presumption of innocence and asked them specifically "why shouldn't we say he has to go take the stand and has to explain himself?"  Jurors Beach and Mathis both indicated they would want to hear from petitioner . . . .  Trial counsel asked again "is that okay with you?  If that man never takes the stand?"  Juror Burke answered that she would want to take the stand if it was her, she would want to testify and profess her innocence.  She said "[i]f I know I didn't do it, then I would want to get up there and say, I did not do this." . . . .

> [] Trial counsel then inquired "why do you think we have that principle, then, that he doesn't have to?"  Juror Burke responded "It is a choice."  Counsel conducted no further inquiry on this issue with Juror Burke, nor did she revisit the issue with Jurors Beach or Mathis.  Instead, she asked Juror Fish to address the issue and then moved on to other areas in her *voir dire* . . . .

> [] Trial counsel did not challenge any of these jurors for cause . . . .

> [] Juror Beach was excuse with a peremptory challenge by one of the parties although it is unclear from the record as to which party . . . .  It is clear, however, that trial counsel did not use a peremptory challenge as to Juror Burke or Juror Mathis . . . .

> [] Juror Burke ultimately was selected as the jury foreperson and petitioner never testified at trial.  Such a "perfunctory" approach to jury selection is outside the range of competence expected of attorneys. . . . Trial counsel's failure to adequately inquire of the jurors on this crucial matter regarding the presumption of innocence and petitioner's right to

remain silent, counsel, failure to challenge either Juror Mathis or Juror Burke for cause and failure to exercise a peremptory challenge as to Juror Mathis and Juror Burke fell below the accepted standard of performance expected of lawyers in a criminal case. Petitioner was prejudiced by this failure to properly select a jury as he did not in fact testify and there were at least two jurors on the jury that could not be fair without him doing so. This conduct therefore constituted ineffective assistance of counsel.

(Docket No. 2 at 13-14).

The CCA made the following findings with respect to petitioner's argument

concerning voir dire:

Next, defendant contends the trial court erred in determining that trial counsel's failure to challenge several prospective jurors for cause was not ineffective assistance of counsel. We disagree.

Trial counsel is responsible for decisions regarding potential jurors: "The decisions on . . . what jurors to accept or strike . . . and all other strategic and tactical decisions are the exclusive province of the lawyer after consultations with his client." Steward v. People. 179 Colo. 31, 34, 498 P.2d 933, 934 (1972) (quoting ABA Standards for Criminal Justice: Defense Function 5.2). Disagreement as to trial strategy is not enough to sustain a claim for ineffective assistance of counsel. People v. Bossert, supra.

Two potential jurors disclosed, in response to questioning, that they would "want to hear from [defendant]," while the third potential juror stated that, if she were in defendant's situation, she would "want to get up there and say, I did not do this."

At the Crim. P. 35(c) hearing, trial counsel testified that she had tried hundreds of criminal trials in her twenty-five-year career and that it was her practice to evaluate potential jurors by the way they look at her and at the defendant. Further, she testified that, after another potential juror, not at issue here made an argument for why a defendant should never have to take the stand, she believed the entire panel understood a defendant's right to testify.

We agree with the trial court's conclusions that trial counsel's decision not to challenge these potential jurors for cause was a reasonable, strategic decision.

(Resps.' Appx. F at 5-6).

"[A]n attorney's actions during voir dire are considered to be matters of trial strategy, which cannot be the basis of an ineffective assistance claim unless counsel's decision is . . . so ill chosen that it permeates the entire trial with obvious unfairness." Neill v. Gibson, 278 F.3d 1044, 1055 (10th Cir. 2001) (internal quotation marks omitted). Petitioner here has failed to demonstrate that his attorney's actions during jury selection permeated the entire trial with unfairness. This court finds that the state courts' conclusion that petitioner's trial counsel did not provide ineffective assistance based on her strategic and tactical decisions during jury selection did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law.

**Handling of Prosecution's Expert.** Petitioner asserts that his trial counsel failed to prevent the allegedly prejudicial, inadmissible, and unfair expert opinion of Veronica Carmody, the parole agent for one of the petitioner's alleged victims who did not tell her that he was a victim. Carmody testified about male victims' failure to report sexual offenses, using statistics from N.C.I.C. She was not endorsed as an expert prior to trial, was unexpectedly qualified as an expert at trial, and thus no discovery regarding Carmody and the basis for her opinion was provided to the defense before trial. Petitioner's trial counsel objected to such testimony on grounds of hearsay and lack of foundation, but she did not object on the grounds that there was lack of notice of such testimony, that she had not been provided with the statistics or any of the underlying facts or data supporting Carmody's opinion, that there was a Colo. R. Crim. P. 16 violation, or that there was a constitutional

violation. Furthermore, trial counsel did not seek a continuance or any other remedy. Instead, she "simply briefly questioned the witness as to the content of the study, making it very clear that she had not actually read the study. She did not question the witness as to anything further . . . ." (Docket No. 2 at 15). Petitioner asserts that the jury's exposure to the statistics testified to by Carmody, as well as the alleged resultant bolstering of the testimony of the alleged victims, was prejudicial and obvious error.

The state trial court heard testimony on this claim at the Rule 35(c) hearing and found as follows:

> One thing I think is – I'm going to do it backwards, I suppose. I'll take the step one of the <u>Strickland</u> test first, but I'm going to go right to step 2, which is prejudice. And the reason is this. I – let me put it this way, that the testimony that Ms. Carmody gave in that regard took up, I don't know, five minutes out of a week-long trial. Nonetheless, five minutes of testimony in some cases can be the five minutes that matters.

> But it's very clear to the Court, however, that it wasn't the five minutes that mattered. And even assuming for the moment that it was error on the part of the Court to let it in or that Ms. Schauer, had she acted differently, could have kept it out and should have, it was only one of the many reasons proffered by the prosecution as to why these individuals did not immediately come forward. And I could just think of a number of them.

> It was argued with a lot of weight of common sense that the same and humiliation of a man being raped by another man is not something that somebody would easily want to tell somebody else, and that, I think, is compelling in and of itself and would be convincing to a juror.

> It was testified to by a number of the individuals that they not only felt shamed, but felt that they would not be believed because they, after all, were convicts, and that Mr. Sylvester was the head of this organization and running the Dismas House and a respected member of the community, and hung out with priests and with senators, and that

it would only add to their humiliation to testify that this had happened, only to not be believed in light of the disparity of the stature in the community between Mr. Sylvester and the individuals he was alleged to have raped.

It was also testified about rather extensively that there was a convict code. That even if you were inclined, that you did not snitch on somebody. It was indicated that quite prominently that Mr. Sylvester had the threatened ability to send these individuals back to prison.

And it was suggested by Ms. Carmody that men don't report rape. Most of those arguments that I just mentioned were much more prominently made that the one made by Ms. Carmody. That there was some statistical showing that men are unlikely to report rape.

And he – and in light of all of that testimony, looking solely at the issue of why didn't you report, doesn't show you must be lying, just looking solely at that issue, it's apparent to the Court that this issue of statistics played a very small part in that. And I'm really quite convinced that the other arguments were stronger, more persuasive than the ones considered by the jury, and this essentially was <u>de minimus</u> when considered with that.

Nonetheless, assuming for the moment that it's important evidence, the next issue is did Ms. Schauer deal with it in a way that shows that she did not meet the standard of a reasonably competent counsel under the circumstances.

And, again, with 20/20, we can be critical and think of ways she might have done it differently, but I'm unprepared at this point, given the explanation that she's given, to say that that is not a reasonably— that is not a reasonable strategic decision in terms of how to handle this.

I might note that one of the possibilities that you have, for example, if you aggressively cross-examine someone on statistics is it simply gives them the opportunity to say over and over the same evidence as you're cross-examining it, and, therefore, one of the ways to deal with those issues is to try and blow by them so they're not highlighted to the jury. That I think is one of the things that Ms. Schauer had in her mind.

. . .

And, lastly, I'll kind of address the issue raised by Mr. Parrott.

I've probably done 250 or so jury trials, maybe more. And probably twice that many if you start counting court trials. I've, therefore, listened to thousands and thousands of witnesses in my life as a judge.

But I will tell you, I have never seen five more compelling witnesses than the victims in this case when they got on the stand. I mean that very sincerely. And the jury came back and told me the same thing when they came back to talk to me after the trial.

The prospect of trying to rebut the credibility of five inmates who were by all outward appearances hardened criminals, and to see them begin to tremble in fear and shame on the stand and breakdown sobbing and in tears at the prospect of having to describe to the jurors the – what happened to them, and the shame and humiliation that was palpable to everyone in the courtroom, that – that was as compelling a testimony as I've ever heard in my life as a judge or a lawyer.

And you can talk about validity of statistics until you're blue in the face, it wouldn't have made one difference in this case to the jurors based on the compelling nature of those victims and their testimony.

(35(c) Hearing Tr. at 288-91, 294-95).

The CCA subsequently made the following findings concerning this issue:

Finally, defendant contends that trial counsel was ineffective in her handling of the prosecution's "expert" witness, V.C. We disagree.

At trial, V.C. testified that male victims of sexual assault rarely report the crime.

Additionally, the "convict code," an unwritten rule in prison society, discourages inmates form reporting any offenses to authorities.

Although the prosecution failed to comply with Crim. P. 16 before requesting that V.C. be qualified as an expert at trial, trial counsel's only objections to V.C.'s testimony were on hearsay and foundational grounds.

At the Crim. P. 35(c) hearing, trial counsel testified that her decision not to object to the witness's qualification on discovery grounds was a strategic one. She testified that she wanted to "get past her . . . testimony," and that the statistic that V.C. testified about had already been testified to by the prosecution's other expert, M.H. Furthermore, all parties had accepted the definition of the "convict

code." Trial counsel's strategy was not to call more attention than necessary to the "convict code."

The court, which also had presided over defendant's trial, found that "The testimony that [V.C.] gave . . . took up, I don't know, five minutes of a week long trial. Nonetheless, five minutes of testimony in some cases can be the five minutes that matters. But it's very clear to the court, however, that this wasn't the five minutes that mattered.

Additionally, the court found that the credibility of the victims would have been virtually impossible to undermine. It said:

> But I will tell you, I have never seen five more compelling witnesses than the victims in this case when they got on the stand. I mean that very sincerely. And the jury came back and told me the same thing when they came back to talk to me after the trial. The prospect of trying to rebut the credibility of five inmates who were by all outward appearance five hardened criminals, and to see them begin to tremble in fear and shame on the stand and break down sobbing and in tears at the prospect of having to describe to the jurors the - what happened to them . . . that was as compelling a testimony as I've ever heard in my life as a judge or a lawyer. <u>And you can talk about the validity of the statistics until you're blue in the face, it wouldn't have made one difference in this case to the jurors based on the compelling nature of those victims and their testimony</u>.

(emphasis added.)

Thus, even if defense counsel's strategic decision was unreasonable, no prejudice resulted.

(Resps.' Appx. F at 10-11).

Petitioner complains that his attorney did not take various courses of action with respect to this expert witness, but his complaints are essentially with his attorney's tactical and strategical decisions. Defense counsel explained during the 35(c) hearing that

> So instead of asking for a continuance, going through all the things that that – that [post-conviction] counsel has suggested I should have done, I made a different decision, which I've done with many sexual

assault experts in the past over the years, I tried many, many sexual
assault cases, it's not always necessary to hit them head on.  You can
go around them.  You can act ignorant like, oh, please explain this.
There's no set way of doing it.  There's nothing – there was not rule.

   . . .

I decided to play confused, and to just let it go, and to try to
minimize what had happened.

(35(c) Hearing Tr. at 250-51).  When asked about not objecting on Rule 16 grounds,

she responded, "I did not.  And I made a decision, it was almost instinctive.  I – I

have been in these situations so many - not exactly like that, but after 25 years you

get a sense of how to get out of a difficult situation, okay, and I went with my

instincts."  (35(c) Hearing Tr. at 260).  The following exchange also took place during

the hearing:

Q    So you felt it was a strategic call to not call the prosecution on
the fact that they just ambushed you with a surprise witness, an
expert witness?

A    Yes, because it would have called attention to what was going
on, much more than it already had been.

Q    Couldn't you object and ask for a sidebar so the jury didn't hear
it?

A    I could have, but I decided just to go after the witness and act like I was
ignorant and ask some questions about it. And I didn't need to ask her
anything else, because the prosecutor had already asked all my
questions that she had answered.

. . .

Q    And despite the fact that you had never seen this study, you felt it was
effective cross-examination to ask her about the methodology for the
first time in front of the jury?

A    I wanted to get past the testimony, and sometimes that is the most

effective way to do it, to neutralize it.  I knew what I could have done, okay.  At that point, I knew what I could have done.  I could have stopped it.  I could have gone up, but I didn't think in the end I'd get anywhere, so I felt it was better the proceed the way I did.

. . .

I wanted to get past this witness.  I wanted to get past her little testimony.  I knew there was only one thing she wanted to tell was the statistic.  I wasn't afraid of it.  Ms. Heil had already testified that there's a very good low percentage of reporting.  All my background I –from everything I heard, they [male victims of sexual assaults by males] do not report right away.  Almost never.

. . .

. . . I did not research any statistics as I did not expect it to come up.  I relied on everyone who had been in the situation and what they told me.

. . .

There is no rule that says exactly how to proceed on cross-examination with an expert.  You can ignore the expert, not ask a single question, you could go after the expert, or ask questions, lots of questions, just a few questions, or you can turn to your own expert later and have – and say something about it, if you want to.

. . .

. . . I had nothing to gain by going to the bench and asking for a continuance or any of those things. . . . I was having [petitioner's] best interest at hear.  I was trying to – to go with the trial the way it was playing out.

. . . I meant to be that light.  I meant to be that cursory.  I meant to handle it exactly the way I did.

. . . It [Ms. Carmody's testimony] wasn't the heart of the case.  It wasn't at all the heart of the case.

(35(c) Hearing Tr. at 260-64).

Petitioner has not demonstrated that his attorney's handling of this witness was unreasonable and deprived him of a fair trial.  In fact, under the circumstances, such trial strategy appears to be sound.  In sum, this court finds that the state courts' conclusion that petitioner's trial counsel did not provide ineffective assistance based on her strategical and tactical handling of this unexpected expert witness did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law.

**Advisement Regarding Testimonial Rights.**  Petitioner asserts that his trial counsel did not advise him adequately about his right to testify and the consequences of his decision whether to do so.  The trial court heard testimony from the petitioner, his trial attorney, and the defense investigator on this claim at the Rule 35(c) hearing, following which the trial court found as follows:

> As to the Curtis[2] advisement and discussions relating to that, I think that's an issue first of credibility of the witnesses.  We have one witness who says, that's Mr. Sylvester, that we didn't really talk about it, and then when we did, she told me I think we've done a good enough job defending the case, you don't need to testify.
>
> I can just tell you from experience, I'd be pretty shocked to hear a lawyer say that.  Shocked enough to say that if that was true, I think I would find that is ineffective assistance of counsel.  But it's, I think, so unlikely that was actually said that I don't have any problem finding that if that's the way Mr. Sylvester remembers it, that he's just incorrect about that.
>
> Based on the testimony of Ms. Schauer and Mr. Demarest, I'm convinced that not only did the Court do an adequate Curtis advisement, but that Mr. Sylvester had plenty of opportunities to and did actually avail himself of the opportunities to discuss with Ms. Schauer the issue of whether he would testify.

---

[2]People v. Curtis, 681 P.2d 504, 513-14 (Colo. 1984).

I can also say that even assuming that he did not discuss it extensively, I find that he did, but that consequences to the defendant doing that was a good one.

And it is, of course, the defendant's decision to make, but he had a lot of baggage. If he'd have testified, I think any competent counsel would have told him that you can testify if you want to, but it's probably not a good idea, and here's why. And I do find that's exactly what Ms. Schauer told him, in essence.

(35(c) Hearing Tr. at 293-94).

The CCA made the following findings with respect to this issue:

We also reject defendant's contention that trial counsel was ineffective for allegedly failing to discuss with him, in sufficient detail, the pros and cons of testifying or remaining silent.

The decision whether to testify or to remain silent at trial is made by the defendant. To make the decision to waive the right to testify in a voluntary, knowing, and intentional manner, the defendant must be aware that he or she has a right to testify, must know the consequences of testifying, and must be cognizant that he or she may take the stand notwithstanding the contrary advice of counsel. People v. Curtis, 681 P.2d 504 (Colo. 1984).

When the trial court began the morning trial session by giving defendant the Curtis advisements, defendant stated that he had not had the opportunity to consult his attorney "in detail" concerning these rights. The trial court continued the advisement until later that afternoon. The court again inquired about defendant's decision and the circumstances leading up to it:

The court:     [Defendant], at this point, you've had an opportunity to discuss your decision about whether or not you will testify.

Defendant:   We talked this morning.

The court:     And have you have made a decision as to whether you will be testifying or not testifying?

Defendant:   Not testifying.

The court:     Your decision today is not to testify?

Defendant:    Correct.

The court:    Is anybody pressuring you into that?

Defendant:    No.

The court:    Is it your own decision?

Defendant:    Yes.

At the Crim. P. 35(c) hearing, the defense investigator testified he was present when defendant was advised, by trial counsel, of the pros and cons of testifying.  Additionally, trial counsel testified that defendant lied when he testified at the Crim. P. 35(c) hearing that she had told him during his trial, "We've put on a good enough defense, you don't have to testify."

The trial court considered this to be an issue of "credibility" and chose to rely on the testimony of trial counsel and the investigator in making its determination that defendant "had plenty of opportunities to and did actually avail himself of the opportunities to discuss with [trial counsel] the issue of whether he would testify."

There is ample evidence in the record to show that defendant voluntarily, knowingly, and intentionally waived his right to testify and that trial counsel adequately consulted with him before the decision was made.  Therefore, the trial court committed no error in rejecting defendant's claim.

(Resps.' Appx. F at 7-9).

"A criminal defendant has a constitutional right to testify in his own behalf at trial. . . .  The decision whether to testify lies squarely with the defendant; it is not counsel's decision."  Cannon v. Mullin, 383 F.3d 1152, 1171 (10th Cir. 2004), cert. denied, 544 U.S. 928 (2005).  Furthermore, "[d]efense counsel should inform the defendant that he has the right to testify and that the decision whether to testify belongs solely to him. . . .  Counsel should also discuss with the defendant the strategic implications of choosing whether to testify, and should make a

recommendation to the defendant."  Id.

Here, following the 35(c) hearing, the trial court made a credibility determination after hearing conflicting testimony regarding defense counsel's discussion, or lack thereof, with the petitioner regarding his testifying at trial.  "Under AEDPA . . . a federal habeas court must find the state-court conclusion 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  Rice v. Collins, 546 U.S. 333, 338 (2006) (citing 28 U.S.C. § 2254(d)(2)).  "State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'"  Id. at 338-39 (quoting 28 U.S.C. § 2254(e)(1)).  Therefore, this court can grant the petition on this ground only if it was unreasonable for the trial court to credit the defense attorney's and investigator's testimony over that of the petitioner on this issue.  This court finds that the state court decision was not an unreasonable determination of the facts in light of the evidence presented in the 35(c) hearing.

**Challenging Habitual Criminal Counts.**  Finally, petitioner asserts that his trial counsel was ineffective because she did not subject the habitual criminal counts to any adversarial testing.  Trial counsel allegedly  "presented no witnesses and no evidence on behalf of the defense . . . .  Further, [she] conducted no cross-examination of the prosecution witness and when she made objections to the giving of expert testimony and the various exhibits, counsel simply stated the grounds for her objections as 'for the record' . . . ."  (Docket No. 2 at 19).  Petitioner contends that no prejudice need be shown as to this error.

The trial court made the following findings concerning this issue:

As to the habitual criminal phase, and, again, I did have that hearing, it appeared to me that there were no good bases upon which to challenge the documentation. And I can't find that it's unreasonable not to challenge the admissibility of documentation when you don't have a good basis to do so.

(35(c) Hearing Tr. at 293). The CCA then made these findings:

Next, defendant argues that the trial court erred in concluding that trial counsel's failure to challenge the validity of his previous convictions was not ineffective assistance of counsel. We find no error.

Although defendant failed to allege or to offer any evidence at the Crim. P. 35(c) hearing that his prior convictions were invalid, he argues that, because trial counsel failed to attack the validity of his prior convictions by cross-examining any of the prosecution's witnesses and because she made only "routine" objections, her assistance was ineffective.

The trial court found that defendant did not have a good basis to challenge the documentation of his previous convictions. It concluded, "I can't find that it's unreasonable not to challenge the admissibility of documentation when you don't have a good basis to do so."

The record completely supports this analysis. We find no error.

(Resps.' Appx. F at 9).

As correctly noted by the CCA, petitioner has not alleged or offered any evidence that his prior convictions were invalid. Counsel would not be ineffective for failing to advance a futile objection. See Scott v. Romero, 153 Fed. Appx. 495 (10th Cir. Nov. 2, 2005) ("Counsel is not ineffective for failing to advance a futile argument."), cert. denied, 547 U.S. 1077 (2006); Bosch v. McKune, 2006 WL 47687 (D. Kan. Jan. 9, 2006) (Petitioner's "counsel is not required to call witnesses and introduce exhibits that will not aid his client . . . ."). Even assuming his counsel erred by not attacking the validity of those prior convictions by not cross-examining the prosecution's witnesses, etc., petitioner has made no showing of "a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different."

Strickland, 466 U.S. at 694.  Therefore, habeas relief should not be granted on this

ground.

In sum, the court finds as follows.  The state court's findings of fact are presumed

to be correct, and the petitioner has failed to rebut them.  Furthermore, this court agrees

with the respondents that the state courts' application of Strickland is not unreasonable.

Petitioner has not demonstrated that his trial counsel's performance fell below an

objective standard of reasonableness or that he was prejudiced.  Petitioner's habeas

claims fail because the state court's decision was not contrary to or an unreasonable

application of established federal law, nor did it result in a decision based on an

unreasonable determination of the facts in light of the evidence presented in the state

court proceeding.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that the Application for a Writ of Habeas Corpus Pursuant to

28 U.S.C. § 2254 (Docket No. 2) be **DENIED** and **DISMISSED WITH PREJUDICE**.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the**

**parties have ten (10) days after service of this recommendation to serve and file**

**written, specific objections to the above recommendation with the District Judge**

**assigned to the case.  The District Judge need not consider frivolous, conclusive,**

**or general objections.  A party's failure to file and serve such written, specific**

**objections waives *de novo* review of the recommendation by the District Judge,**

**Fed. R. Civ. P. 72(b), Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives**

**appellate review of both factual and legal questions.  Makin v. Colorado Dep't of**

**Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411,**

Dated: June 30, 2008           s/ Michael J. Watanabe_____
       Denver, Colorado           Michael J. Watanabe
                                  United States Magistrate Judge